UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BHAGUBHAI HIRA, PRADIP HIRA, )
and SHIRISH HIRA, )
 )
v. ) No. 3:13-cv-527
 )
NEW YORK LIFE INSURANCE )
COMPANY, )

## MEMORANDUM OPINION

This civil action is before the Court on defendant's pending second motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. 25]. Defendant has filed a memorandum in support of the pending motion [Doc. 26], plaintiffs have responded in opposition to the motion [Docs. 28, 29], and defendant has filed a reply [Doc. 31]. Thus, the motion has been fully briefed and is ripe for determination.

For the reasons set forth herein, the defendant's motion to dismiss [Doc. 25] will be **GRANTED in part** and **DENIED in part**.

### I. Relevant Facts[1]

Beginning in 1990 and continuing to 2004, plaintiff Bhagubhai Hira purchased 14 term life insurance policies on his own life, his wife's life, and on his son's and daughter-in-law's lives from defendant New York Life Insurance Company [Doc. 23 at ¶¶ 3, 6].

---

[1] For the purposes of a motion to dismiss, the Court takes the factual allegations in the first amended complaint [Doc. 23] as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

At a sales presentation on or about November 27, 1990, defendant's agents explained to Mr. Hira that he was purchasing a guaranteed increasing premium term policy [*Id.* at ¶ 8]. The agents told Mr. Hira that these increasing premium term policies required higher than usual premiums because they were convertible to whole life policies at the insured's age of 70 [*Id.* at ¶ 9]. Mr. Hira was told that he would receive one hundred percent credit of premiums paid toward the new whole life policy [*Id.*]. Mr. Hira was also told that the converted policies would have cash benefits [*Id.* at ¶ 10]. Mr. Hira was told that, at the time of conversion of the policies, he would receive credit of the total amount of premiums paid and that there would only be "insignificant admin fees" for the conversion of the policies [*Id.* at ¶ 11]. Based on these promises, Mr. Hira purchased the term life insurance policies identified in the amended complaint and paid a total of $322,055 in premium payments as of the initiation of this case [*Id.* at ¶ 12].

On or about May 27, 2009, Mr. Hira asked defendant's agents "to explain steps 4 and 5 on the O.A.T.C. Calculation Date Form he received for policy number 44 049 250"[2] [*Id.* at ¶ 16]. Mr. Hira told the agents that they had never explained steps 4 and 5 to him despite his requests, nor were these steps explained during the sales presentation of the policy [*Id.* at ¶ 17].

Mr. Hira claims that he did not realize he had been damaged on policy number 44049250 until October 2009 when he was required to pay $90,318.13 to complete the conversion of the policy or take a loan out with defendant at 6% interest and payments of

---

[2]Although it is referenced in the first amended complaint, policy number 44049250 is not at issue in this case, but is the subject of a related action pending in this court, case number 3:12-cv-373, *Hira v. New York Life Ins. Co.*

$525 per month [*Id*. at ¶ 19]. Mr. Hira claims this was completely contrary to what he had been told by defendant's agents [*Id*.]. As a result, Mr. Hira claims he will lose the benefit of the face amounts and/or the premiums paid on the policies he has purchased [*Id*. at ¶¶ 22—24].

Plaintiffs assert several causes of action against defendant, including violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961—1968, fraud, constructive fraud, breach of fiduciary duty, breach of contract and the implied duty of good faith and fair dealing, and unjust enrichment [*Id*. at ¶¶ 27—48]. Plaintiffs seek disgorgement of the premium payments made, damages, attorney's fees, and costs [*Id*. at ¶ A—H].

**II. Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

### III. Analysis

#### A. Tort Claims

Defendant's motion asserts numerous reasons why all of plaintiffs' claims should be dismissed. It is worth beginning with the areas of agreement. First, defendant argues, and plaintiffs concede, that the tort claims for fraud, constructive fraud and breach of fiduciary duty are time-barred [Doc. 25 at ¶¶ 2, 4; Doc. 28 at ¶ 2]. The Court agrees. The tort claims are claims for damage to personal property and are subject to the three-year statute of limitations in Tenn. Code Ann. § 28-3-105(1).[3] *Vance v. Schulder*, 547 S.W.2d 927, 932 (Tenn. 1977) (an economic loss caused by fraud or misrepresentation is

---

[3]Tenn. Code Ann. § 28-3-105(1) provides that "[a]ctions for injuries to personal … property" "shall be commenced within three (3) years from the accruing of the cause of action."

4

a tortious injury to personal property). Accepting Mr. Hira's allegation as true for the purposes of this analysis, he realized he had been damaged by defendant's actions in October 2009 [Doc. 23 at ¶ 19]. Thus, his claims of fraud, constructive fraud and breach of fiduciary duty accrued in October 2009 and should have been filed no later than October 2012. *See Precision Tracking Solutions, Inc. v. Spireon, Inc.*, No. 3:12-cv-00626-PLR-CCS, 2014 WL 3058396, at *6 (E.D. Tenn. July 7, 2014) (a cause of action for fraud or misrepresentation "accrues when the plaintiff discovers his or her injury and the cause thereof") (quoting *Cumberland & Ohio Co. of Texas v. Goff*, 2009 WL 3517531, at *4, n.8 (M.D. Tenn. Oct. 22, 2009)). Because this case was not filed until August 31, 2013 [Doc. 1], the claims for fraud, constructive fraud, and breach of fiduciary duty are time-barred and must be dismissed.

    B.    <u>Unjust Enrichment</u>

Defendant argues that plaintiffs cannot assert a claim for unjust enrichment where a valid and enforceable contract exists [Doc. 25 at ¶ 8; Doc. 26 at pp. 12—13]. Plaintiffs have conceded that "the unjust enrichment claim is not proper given Defendant's admission that a contract exists" [Doc. 28 at ¶ 4]. Defendant is correct. "Courts may impose a contract implied in law where no contract exists under various quasi contractual theories, including unjust enrichment." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524—25 (Tenn. 2005). It is undisputed that the life insurance policies at issue in this case are contracts. Accordingly, plaintiffs cannot assert a claim for unjust enrichment and that claim will be dismissed.

5

C. <u>Civil RICO Claim</u>

Plaintiffs' RICO claim is set forth in the amended complaint as follows:

> 27. Plaintiff[s] avers that Defendant through its agents developed an enterprise regarding these IPT policies[4] to mislead potential purchasers about the material facts concerning these IPT polices in order to maximize the Agents['] commissions and the Defendant's premiums taken in and to complete[ly] diminish the face value of the policies. The Defendant acted indirectly in this enterprise by managing and controlling its agents and its agents acted directly by meeting directly with victims such as Bhaughbai Hira to sell the IPT policies. The Defendant's Agents knowingly carried out the enterprise's affairs for the financial benefit of both themselves and that of the Defendant.
>
> 28. Defendant through the conduct of the Agents []established an enterprise by which it controlled the Agents through a pattern of selling IPT policies to prospective buyers under fraudulent pretenses set forth herein which are continuing in nature and post [*sic*] a significant threat to other potential IPT policy purchasers of the Defendant.

[Doc. 23 at ¶¶ 27—28].

Pursuant to 18 U.S.C. § 1964(c), a plaintiff may assert a private right of action for treble damages against any person who is "injured in his business or property by reason of a violation of § 1962." *Riverview Health Institute LLC v. Medical Mut. of Ohio*, 601 F.3d 505, 513 (6th Cir. 2010). Section 1962 makes it unlawful for any person to (1) use income derived from a "pattern of racketeering activity," to acquire interest in or establish operation of any enterprise engaged in, or the activities of which affect, interstate commerce; (2) through a pattern of racketeering activity, acquire or maintain an interest in or control of any enterprise engaged in, or the activities of which affect, interstate commerce; (3) through a pattern of racketeering activity, conduct or participate

---

[4] As used in the amended complaint, the phrase "IPT policies" means "increasing premium term policies" [Doc. 23 at ¶ 6].

in the conduct of an enterprise engaged in, or the activities of which affect, interstate commerce; or (4) conspire to violate any provision of § 1962. *Id*. The amended complaint does not specify which subsection of 18 U.S.C. § 1962 the plaintiffs rely upon to assert their cause of action under RICO.

Regardless of which theory plaintiffs rely upon, a civil RICO claim must contain the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). In addition, plaintiffs must establish that defendant "engaged in a 'pattern of racketeering activity' consisting of at least two predicate acts of racketeering activity occurring within a ten-year period." *Moon*, 465 F.3d at 723 (quoting 18 U.S.C. § 1961(5)). Specifically, plaintiffs must establish a predicate act enumerated in 18 U.S.C. § 1961(1). *Melton v. Blankenship*, No. 08-5346, 2009 WL 87472, at *2 (6th Cir. Jan. 13, 2009). Defendant argues that plaintiffs have not alleged two predicate acts within a ten-year period because common law fraud is not one of the predicate offenses enumerated in RICO [Doc. 26 at pp. 14—15]. Plaintiffs argue that all of their common law claims, including the time-barred claims of fraud, fraudulent misrepresentation, and constructive fraud, are predicate acts [Doc. 29 at pp. 6—7].

Defendant is correct. The list of predicate acts in 18 U.S.C. § 1961(1) is exclusive and does not include claims for breach of contract, common law fraud, fraudulent misrepresentation, or constructive fraud. *See Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993) ("Only those acts itemized in 18 U.S.C. § 1961(1) can constitute predicate

7

offenses for RICO violations"); *Jackson v. Dempsey*, No. 1:09-CV-240, 2010 WL 1408432, at *5 (E.D. Tenn. Apr. 2, 2010) (Collier, J.). Because these claims are not included in the list of racketeering activities in § 1961(1), they cannot be predicate acts for a RICO claim. *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 103—04 (D. Conn. 2014) ("Since breaching a contract … is not one of the offenses listed in 18 U.S.C. § 1961(1), it cannot serve as a predicate act to a RICO violation"); *see Carr v. Tillery*, 591 F.3d 909, 918 (7th Cir. 2010) (a breach of contract claim "cannot be transmogrified into a RICO claim" by charging that the breach was fraudulent); *Guiliano v. Fulton*, 399 F.3d 381, 388 (1st Cir. 2005) ("we do not credit generic allegations of common law fraud that do not implicate the mails or wires, as these acts do not constitute racketeering activity under RICO"); *Tunne v. Hendrick*, No. 5:10CV-00181-JHM, 2012 WL 3644825, at *14 (W.D. Ky. Aug. 24, 2012) (common law fraud is not a predicate act under RICO); *Estate of Wyatt v. WAMU/JP Morgan Chase Bank*, No. 09-14919, 2012 WL 933289, at *7 (E.D. Mich. Mar. 20, 2012) ("Allegations of common law fraud cannot support a RICO claim"); *Emlyn Coal Processing of Minn., LLC v. Xinergy Corp.*, No. 6:09-CV-128-HAI, 2011 WL 1988249, at *3-4 (E.D. Ky. May 19, 2011) (neither common law fraud nor breach of contract are predicate acts under RICO). In the absence of any predicate acts, plaintiffs cannot state a claim for a civil RICO violation and this claim must be dismissed.[5]

---

[5]Defendant also argues that plaintiffs' RICO claim is time-barred [Doc. 25 at ¶ 3]. However, in light of the Court's conclusion on the issue of predicate offenses, the Court need not reach this issue.

D. <u>Breach of Contract</u>

Defendant first argues that plaintiffs' breach of contract claim is time-barred because plaintiffs knew or should have known the conversion terms of their policies when Mr. Hira first acquired them, beginning in 1990, and/or when the policies were transferred to Pradip and Shirish Hira in 2006[6] [Doc. 26 at pp. 5—7]. However, whether a plaintiff knew or should have known that a cause of action existed is a question of fact that is inappropriate for summary resolution. *House v. Edmondson*, No. W2005-00092-COA-R3-CV, 2006 WL 1328810, at *17 (Tenn. Ct. App. May 16, 2006). The allegations in this case, which the Court must accept as true for purposes of considering a motion to dismiss, are that Mr. Hira did not realize he had been damaged by defendant's actions until October 2009 [Doc. 23 at ¶ 19]. Thus, if the Court were to apply the 6-year statute of limitations for breach of contract claims in Tenn. Code Ann. § 28-3-109(a)(3), the plaintiffs' claim, filed in August 2013, would be timely filed.

Defendant next argues that plaintiffs' breach of contract claim sounds in tort and is governed by the three-year statute of limitations for property torts; thus, for the same reasons presented as to the tort claims, *supra*, defendant argues that the breach of contract claim is time-barred [Doc. 25 at ¶ 7; Doc. 26 at p. 12, n.11]. Defendant also argues that plaintiffs have not alleged a breach of the terms of the policies, but rather allege that the policies should contain the terms discussed in the 1990 sales presentation; thus, plaintiffs have not alleged a breach of contract [*Id.*].

---

[6]The Court notes that the amended complaint in this case contains no allegations regarding a transfer of the policies to Pradip and Shirish Hira.

Plaintiffs' response to this argument is imprecise at best. Plaintiffs contend that the policies at issue in this case "have not come due for conversion." Plaintiffs say they are "suffering continuing injury and/or damages", but have "yet to suffer the ultimate damages 'conversion of the policies' which have yet to come due" [Doc. 29 at pp. 2—3]. Plaintiffs also claim they have properly alleged the elements of a breach of contract, whereby "at the time for conversion Defendant will not honor the terms of the contract as set forth by Defendants agents[,] i.e.[,] anticipatory breach" and that "[p]laintiffs also rely on the theory of parole evidence" [Doc. 29 at p. 6].

In reply, defendant suggests that if the policies have not yet come due for conversion, the plaintiffs' claims are not ripe for adjudication [Doc. 31 at pp. 1—2]. This, however, does not address plaintiffs' argument for anticipatory breach. "In order to serve as an anticipatory breach or repudiation, the words and conduct of the contracting party must amount to a total and unqualified refusal to perform the contract." *Mid-South Indus., Inc. v. Martin Mach. & Tool, Inc.*, 342 S.W.3d 19, 25—26 (Tenn. Ct. App. 2010) (quoting *Wright v. Wright*, 832 S.W.2d 542, 545 (Tenn. Ct. App. 1991)). Further, "[w]hether the words and/or actions of the contracting party have risen to the level of repudiation is normally a question of fact to be determined by the trial court." *Id*. As to the breach of contract claim, the amended complaint alleges that defendant "fail[ed] to keep the promises by way of its Agents" to Mr. Hira and that "Defendant will not and cannot perform its end of the bargain" [Doc. 23 at ¶¶ 40, 44]. The Court finds that whether these allegations, accepted as true for the purposes of this analysis, rise to the

10

level of an unqualified refusal to perform the contract is a question of fact which cannot be determined on a motion to dismiss.

With respect to defendant's argument that the breach of contract claim really sounds in tort, the Court is guided by the Tennessee Supreme Court's recent decision in *Benz-Elliott v. Barrett Enters., LP*, 2015 WL 294635 (Tenn. 2015). The Tennessee Supreme Court noted the longstanding rule that a court must identify the gravamen of each claim alleged to determine the applicable statute of limitations. *Id.* at *1. The court clarified "the correct framework for courts to employ when ascertaining the gravamen of a claim for the purpose of choosing the applicable statute of limitations." *Id*. at *10. Courts are instructed to utilize a two-step approach as follows: "a court must first consider the legal basis of the claim and then consider the type of injuries for which damages are sought." *Id*. The court noted that "[t]his analysis is necessarily fact-intensive and requires a careful examination of the allegations of the complaint as to each claim for the types of injuries asserted and damages sought." *Id.*

Utilizing this test, the Court finds that the legal basis of the plaintiffs' remaining claim is breach of contract. Plaintiffs have explicitly alleged that defendant has breached or will breach the contracts (*i.e.*, the policies) at issue and that they have been damaged [Doc. 23 at ¶¶ 44—45]. With respect to the second step of the *Benz-Elliott* test, the Court must consider the type of injuries for which damages are sought. The amended complaint seeks several types of damages, including a generic request for "damages for breach of contract" [*Id*. at p. 10, ¶ F].

11

Defendant argues that plaintiffs are essentially asserting a claim for fraud incident to a contract or in the inducement of a contract that is subject to the three-year statute of limitations as found in *Vance v. Schulder*, 547 S.W.2d 927, 931 (Tenn. 1977). In *Vance*, the Tennessee Supreme Court considered the appropriate statute of limitations where fraudulent representations induced the sale of stock for less than its value. The court concluded that the gravamen of the plaintiff's claim was fraud in the inducement of a contract, or the common law action of deceit. *Id*. This argument gives the Court pause inasmuch as the plaintiffs have alleged that the policies at issue do not contain the conversion terms as represented in the 1990 sales presentation [*see* Doc. at ¶¶ 8—12, 30]. However, it appears that plaintiffs have also alleged, albeit briefly, that defendant "will not and cannot perform its end of the bargain" [*Id*. at ¶ 44]. Thus, the amended complaint includes allegations of financial damages, that is, the defendant has not or will not convert the policies according to the terms allegedly promised. *See Sanders v. First Tenn. Bank, N.A.*, No. E2014-00812-COA-R3-CV, 2015 WL 1417203, at *4 (Tenn. Ct. App. Mar. 26, 2015). While this is a close question, the Court finds that, on the present record, the plaintiffs' allegations must be accepted as true, Thus, the Court concludes that plaintiffs are seeking damages for breach of contract and/or anticipatory breach of contract. Therefore, the six-year statute of limitations in Tenn. Code Ann. § 28-3-109(a)(3) for breach of contract claims applies and plaintiffs' breach of contract claim is timely filed.

E.  Standing

Defendant's final argument is that plaintiffs Pradip and Shirish Hira lack standing to bring this action because they did not purchase the policies at issue or attend the allegedly misleading sales presentation in 1990 [Doc. 26 at pp. 15—16].  Plaintiffs respond that they have standing because they are intended third-party beneficiaries of the policies [Doc. 29 at pp. 7—8].  Defendant replies that plaintiffs "are not alleging that Defendant breached or will breach the actual policies" but are asserting a misrepresentation claim [Doc. 31 at p. 9].  In fact, plaintiffs have alleged a breach of contract or anticipatory breach of contract claim as discussed *supra*.

As explained by the Tennessee Supreme Court, a third-party is an intended third-party beneficiary of a contract, and thus is entitled to enforce the contract's terms, if:

> (1)  the parties to the contract have not otherwise agreed;
> (2)  recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and
> (3) the terms of the contract or the circumstances surrounding performance indicate that either:
> (a)  the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or
> (b)  the promise intends to give the beneficiary the benefit of the promised performance.

*Owner-Operator Indep. Drivers Assoc., Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 70 (Tenn. 2001); *Ward v. Glover*, 206 S.W.3d 17, 33 (Tenn. Ct. App. 2006).  In the present case, the policies at issue are not contained in the record, nor are the terms relevant to this issue restated in the pleadings.  Accordingly, the Court is without sufficient information at this time to make a determination as to whether plaintiffs Pradip and Shirish Hira have

13

standing to sue on the policies or not. The defendant will be permitted to raise this issue, if appropriate, at a later date.

## IV. Conclusion

For the reasons set forth herein, the defendant's motion to dismiss [Doc. 25] will be **GRANTED in part** and **DENIED in part**. The plaintiffs' claims for fraud, constructive fraud, breach of fiduciary duty, civil RICO, and unjust enrichment will be dismissed. The case will proceed solely on plaintiffs' breach of contract claim. An appropriate order will be entered.

                                                         s/ Thomas W. Phillips
                                           SENIOR UNITED STATES DISTRICT JUDGE